UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

STIDHAM TRUCKING, INC.,
LARRY STIDHAM,

         Plaintiffs,

    v.

GREAT WEST CASUALTY COMPANY
and DOES 1 through 50,
inclusive,

         Defendants.

_____/

NO. CIV. S-09-2110 LKK/EFB

O R D E R

Plaintiffs in this suit claim that defendant insurer wrongfully refused to defend them in a prior third party suit. Defendant moves for judgment on the pleadings, arguing that the third party claims fell within an "employment related practices" exemption in plaintiffs' insurance policy. The court evaluates the motion on the papers and after oral argument. For the reasons stated below, defendant's motion is granted.

////

1

1                           **I. BACKGROUND**

2   **A.   The Underlying Third Party Suit**

3        In the underlying action, Robert Bare filed suit against Larry

4   Stidham, Stidham Trucking, Inc., and various other defendants.[1]

5   Bare is not a party to this suit.   Bare alleged that he had

6   previously been employed by Stidham Trucking, Inc. as Vice

7   President of Administration, but that he voluntarily left this

8   position in the spring of 1993.  Bare alleged that on or about July

9   29, 2009, Larry Stidham, in his capacity as President of Stidham

10  Trucking, knowingly falsely represented to various individuals that

11  Bare had never held the Vice President position.   Stidham also

12  allegedly provided copies of Bare's application for employment with

13  Stidham trucking, Bare's 1993 tax forms, and other documents.  The

14  recipients of these communications were officials at the Lake

15  Shastina Mutual Water District, Bare's employer at the time.  These

16  representations allegedly caused Bare to lose his job.   Another

17  defendant in the Bare suit then forwarded Stidham's communications

18  to a professional ethics panel, triggering an investigation in

19  which Bare was eventually exonerated. The communications were

20  subsequently forwarded to various other entities from which Bare

21  sought employment.

22       Bare's claims against the Stidham defendants were for

23  _____

24        [1] Although not relevant to this suit, Bare initially filed in
     federal court, only to have his suit dismissed. Bare re-filed in
25   the Superior Court for the County of Plumas on February 14, 2003,
     filing an amended complaint on March 31, 2004.  The differences
26   between the complaints are not pertinent to this action.

negligence, intentional infliction of emotional distress, intentional interference with contractual and prospective economic relations, and defamation (libel and slander). Stidham and Stidham Trucking tendered the suit to Great West Casualty Co. ("Great West") and requested that Great West defend them against Bare's claims.

**B.   Stidham's Insurance Policy**

Stidham Trucking had a commercial general liability insurance policy with Great West.[2] This policy insured against, among other things, liability for personal injury and bodily injury, including "Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services[] or . . . that violates a person's right of privacy." Compl. Ex. 1. For purposes of this motion, the parties agree that Bare's claims against Stidham and Stidham Trucking meet this definition.

Both the personal injury and bodily injury provisions exclude, however, injury arising out of any "Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, or discrimination directed at that person." This "employment-related practices" exclusion applies "(1) Whether the insured may be liable as an employer or in any other capacity; and (2) To any obligation to share damages with or repay someone else

---

[2] For purposes of this motion, Great West does not dispute that the policy covered all relevant times.

1  who must pay damages because of the injury." <u>Id.</u>

2  **C.   Defense of the Underlying Third-Party Complaint**

3   Shortly after the Bare's complaint was filed, plaintiffs in

4  this suit (Stidham and Stidham Trucking) tendered the complaint to

5  Great West for defense.  Compl. ¶ 12-14.  Great West refused to

6  defend, and did so "without performing a reasonable investigation."

7  Compl. ¶ 15.  Plaintiffs retained counsel to defend the Bare suit.

8  Plaintiffs succeeded on summary judgment.  Bare appealed, but

9  abandoned his appeal in exchange for plaintiffs' waiver of the

10  right to seek attorneys' fees and costs.

11   Plaintiffs filed this suit in state court, arguing that Great

12  West's refusal to defend the action was a breach of contract and

13  of the implied covenant of good faith and fair dealing. After

14  answering the complaint, Great West removed the suit to this court.

15  Great West now moves for judgment on the pleadings pursuant to Fed.

16  R. Civ. P. 12(c).

17   **II. STANDARD**

18   A motion for judgment on the pleadings may be brought "[a]fter

19  the pleadings are closed but within such time as to not delay the

20  trial." Fed. R. Civ. P. 12(c). All allegations of fact by the party

21  opposing a motion for judgment on the pleadings are accepted as

22  true.  <u>Doleman v. Meiji Mut. Life Ins. Co.</u>, 727 F.2d 1480, 1482

23  (9th Cir. 1984).

24   When a Rule 12(c) motion is used to raise the defense of

25  failure to state a claim, the motion is subject to the same test

26  as a motion under Rule 12(b)(6).   <u>McGlinchy</u>, 845 F.2d at 810;

4

1  <u>Aldabe v. Aldabe</u>, 616 F.2d 1089, 1093 (9th Cir. 1989).  Thus, the

2  motion will be granted only if the complaint fails to allege

3  "enough facts to state a claim to relief that is plausible on its

4  face." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 569 (2007).

5  While a complaint need not plead "detailed factual allegations,"

6  the factual allegations it does include "must be enough to raise

7  a right to relief above the speculative level." <u>Id.</u> at 555.  The

8  court must accept all material allegations of the complaint as true

9  and all doubts must be resolved in the light most favorable to the

10 plaintiff.  <u>N.L. Indus. Inc. v. Kaplan</u>, 792 F.2d 896, 898 (9th Cir.

11 1986).

### III. ANALYSIS

13     Plaintiffs allege that defendant breached both the terms of

14 the policy and the implied covenant of good faith and fair dealing

15 by refusing to defend plaintiffs in the underlying third party

16 suit.  Under California law, "a liability insurer owes a broad duty

17 to defend its insured against claims that create a potential for

18 indemnity." <u>Horace Mann Ins. Co. v. Barbara B.</u>, 4 Cal. 4th 1076,

19 1081 (1993).  The California Supreme Court has explained the scope

20 of this duty:

21          the carrier must defend a suit which
            potentially seeks damages within the coverage
22          of the policy.  Implicit in this rule is the
            principle that the duty to defend is broader
23          than the duty to indemnify; an insurer may owe
            a duty to defend its insured in an action in
24          which no damages ultimately are awarded. The
            determination whether the insurer owes a duty
25          to defend usually is made in the first
            instance by comparing the allegations of the
26          complaint with the terms of the policy. . . .

5

1                         Any doubt as to whether the facts give rise to

2                         a duty to defend is resolved in the insured's favor.

3 <u>Id.</u> (internal quotations and citations omitted).

4    Here, defendant argues that all claims in the underlying suit

5 fell within the policy's employment related practices ("ERP")

6 exclusion. "The insurer bears the burden of bringing itself within

7 a policy's exclusionary clauses." <u>HS Servs. v. Nationwide Mut.</u>

8 <u>Ins. Co.</u>, 109 F.3d 642, 644-645 (9th Cir. 1997) (citing <u>Clemmer v.</u>

9 <u>Hartford Ins. Co.</u>, 22 Cal. 3d 865, 880 (1978)). Five published

10 decisions have evaluated similar ERP exclusions under California

11 law. In chronological order, these are:

12                1) <u>Loyola Marymount University v. Hartford</u>

13                <u>Accident & Indemnity Co.</u>, 219 Cal. App. 3d 1217 (1990)

14                2) <u>Frank & Freedus v. Allstate Ins. Co.</u>, 45 Cal. App. 4th 461  (1996)

15

16                3) <u>HS Servs.</u>, 109 F.3d 642

17                4) <u>Golden Eagle Ins. Corp. v. Rocky Cola Cafe</u>, 94 Cal. App. 4th 120 (2001)

18                5) <u>Low v. Golden Eagle Ins. Co.</u>, 104 Cal. App.

19                4th 306 (2002)

20 These cases "involve[] generally similar facts, similar causes of

21 action, closely similar policy provisions, and identical law."[3]

22 _____

23     [3] The first four cases concerned summary judgment. <u>Low</u>'s posture was more unusual. The insurer was in

24 reorganization/liquidation proceedings, during which it was overseen by the Insurance Commissioner. The insured applied, under

25 Cal. Ins. Code section 1010, for an order that would direct the Commissioner to show cause as to why his decision should not be

26 reversed, and the Court of Appeal reviewed the denial of this application.

1   Low, 104 Cal. App. 4th at 314.   In particular, each involved an

2   employment related practices ("ERP") exclusion substantially

3   similar to the one at issue here.   Low held that all these cases

4   were consistent with a single framework.   In deciding whether

5   conduct is "employment related," courts consider "(1) the nexus

6   between the allegedly defamatory statement (or other tort) at issue

7   and the third party plaintiff's employment by the insured, and (2)

8   the existence (or nonexistence) of a relationship between the

9   employer and the third party plaintiff outside the employment

10  relationship." Low, 104 Cal. App. 4th at 314.   The Ninth Circuit

11  in HS Servs. had previously held that "for an act or omission to

12  be 'employment related,' the relationship must be direct and

13  proximate." HS Servs., 109 F.3d at 647.   As explained below, Low

14  and HS Servs. provide alternative phrasings of the same test:

15  courts have found that a relationship is not proximate when there

16  is an outside relationship that is an intervening cause.

17      Plaintiffs in this suit emphasize Low's reference to the

18  passage of time as "one of the handful of [relevant] factors," but

19  it appears that time is relevant only indirectly.   The passage of

20  time makes it likely that both the connection between the tort and

21  employment is weaker, and that another relationship is stronger,

22  and courts look directly to these factors rather than to time

23  itself. HS Servs., 109 F.3d at 645 ("It is entirely possible that

24  post-termination, injury-causing acts or omissions, even months

25  after termination, could arise directly and proximately from the

26  termination or be so related").   "[T]he mere fact the alleged tort

7

1   sued on arose after the employment relationship had ceased cannot,

2   per se, serve to take the case out of the ambit of the ERP

3   exclusion." Low, 104 Cal. App. 4th at 314.

4       The five cases listed above illustrate application of this

5   framework. Two cases held that conduct was not employment related.

6   In HS Servs., the insured terminated its president, who then formed

7   a competing company. 109 F.3d at 644. The former president then

8   informed the insured's customers that the insured was suffering

9   financially and facing bankruptcy. Id. In response, the insured

10  informed the customers that it was solvent, and that the former

11  president had been terminated "for acts involving dishonesty." Id.

12  The former president sued for defamation. When the insurer refused

13  to defend the suit, the insured filed suit for breach of contract.

14  The district court granted summary judgment for the insurer, on the

15  ground that the statements fell within the policy's ERP exclusion.

16  The Ninth Circuit reversed. While the content of the

17  representations was related to the former president's employment,

18  the "context" of the representations was "the [insured's] attempt

19  to protect itself against a remark made by [the former employee],

20  not as an ex-employee, but as a present competitor." Id. at 646.

21  Thus, "the proximate cause was [the former employee's] own remark

22  in the marketplace, made as a competitor, concerning [the

23  insured's] financial condition. Thus, the chain of causation

24  between the termination and the remarks was broken." Id. at 647.

25      The other case that found that conduct was not employment

26  related was Rocky Cola. As summarized in Low, in Rocky Cola

1               a waitress formerly employed at the insured's restaurant filed suit against the insured and several of its employees, seeking damages for harassment and defamation, among other causes of action.  Her complaint alleged she had become sexually involved with her shift supervisor at work, that after her passion had cooled, he continued to pursue her, following her to a gym where, in the presence of others, he "humiliated her with coarse and abusive remarks about her body."

Low, 104 Cal. App. 4th at 313 (citing Rocky Cola, 94 Cal. App. 4th at 122-23).   The employee further alleged that the former supervisor "communicated to numerous other persons 'words to the effect that [plaintiff] was a 'sexually promiscuous and calculating bitch' who had, by use of sexually aggressive tactics, maneuvered him into an unwanted sexual relationship in order to obtain on-the-job favors from [the supervisor]." Rocky Cola, 94 Cal. App. 4th at 123.  The court of appeals held that the ERP exclusion did not apply.  "[T]he defamatory statement that [the employee] was a 'sexually promiscuous and calculating bitch' was not made in the context of [her] employment.  Nor was the content of the remark directed to her performance during employment or to anything else relating to her employment."  Id. at 128-29.  Although the defamatory remarks touched on employment, in that the supervisor had represented that the employee entered the relationship to "obtain on-the-job favors," the court held that this was insufficient to render the remarks "clearly employment related." Id. at 129 n.9.  The court affirmed the grant of summary judgment for the insured.

In contrast, three cases--Loyola Marymount University,

Frank and Feedrus, and Low--have found that alleged conduct was clearly employment related such that an insurer did not have a duty to defend.  In Loyola,

>            the insured university was sued for damages in the underlying action by two former employees, one a tenured professor, the other a baseball coach.  The professor was dismissed after marrying another faculty member while still a Jesuit priest; the coach was discharged on vague charges of "negligence." Both alleged wrongful termination together with (in one case) invasion of privacy (the professor's marriage) and (in the other) defamation (publishing false accusations about the coach's performance).

Low, 104 Cal. App. 4th at 310 (citing Loyola, 219 Cal. App. 3d at 1220-21).  The insurer refused to defend the suit.  The court of appeal held that the ERP exclusion applied.  "The 'offenses' alleged in the [third party] complaints, occurring as part and parcel of allegedly wrongful termination of the plaintiffs' employment, plainly were directly related to LMU's employment of [the third party plaintiffs], and hence were clearly within the language of exclusion." Loyola, 219 Cal. App. 3d at 1223.  The court offered no further explanation.

In Frank and Feedrus,

>            a former employee of Frank and Freedus sued that law firm for defamation based on statements made by a partner after he had been fired.  Responding to the office manager's concerned comments about the firing, the partner said that the ex-employee was "likely gay and probably has AIDS." He also instructed the office administrator to inform the law firm's staff that the "real reason" the employee was fired stemmed from his "*failure to perform and develop as an associate*." (emphasis in original).

10

HS Servs., 109 F.3d at 645-646 (quoting Frank and Feedrus, 45 Cal. App. 4th at 465).   The former employee contended that the italicized language defamed him.   Frank & Freedus, 45 Cal. App. 4th at 465.   The court held that that statement "was clearly employment-related," in that it "was made in the context of Caprow's employment and its content is directed to Caprow's performance during employment."   Id. at 471-72.

Finally, in Low, an employee filed an employment discrimination lawsuit against his supervisor and employer, alleging that his supervisor had sexually harassed him.   Low, 104 Cal. App. 4th at 308.   While giving an interview about the lawsuit on a radio station, the president of the employer stated that the supervisor had AIDS.   Id.   The supervisor thereafter filed a cross-complaint against the employer and its president for the alleged defamatory statement about his sexual orientation and medical condition.   Id.   The employer's insurer refused to defend the supervisor's claim, invoking an ERP exclusion.   Id.   The court held that the exclusion was proper.

> The statement by Williams, appellant insured's president, certainly qualified as employment-*related*. It was given in response to a question concerning Supervisor's medical condition (and impliedly, his sexual orientation) while an employee of the organization Williams headed. Appearing on a news program devoted to an investigation of appellant's employment practices, Williams was asked and answered a question concerning his knowledge of a particular employee's medical status. Moreover, there is no indication, either in the KMEX interview or otherwise in this record, that Williams and the third party had any kind of relationship beyond that of

11

employer and employee . . . . [H]ere the only
relationship between the two derived from the
employment    relationship,    i.e.,    was
"employment-related."

Id. at 315 (emphasis in original).

    Reviewing these cases, courts have held that an act was not employment related when the actor was motivated by something other than the employment relationship, namely, a relationship as marketplace competitors in HS Servs., and a sexual relationship in Rocky Cola. In these two cases, there was a strong "relationship between the employer and the third party plaintiff outside the employment relationship," Low, 104 Cal. App. 4th at 314, and as a result of this external relationship, the employment relationship was not the proximate cause of the alleged tort. In addition, in Rocky Cola, the content of the alleged defamation was not employment related. In contrast, courts have found conduct to be employment related when the there is an employment relationship and no other relationship explains the conduct.

    In this case, there is an obvious "nexus" between plaintiffs' statement regarding Bare's past job title and plaintiffs' employment of Bare, in that the content of the statement relates to Bare's employment. Although plaintiffs do not address the issue, the court holds that this nexus extends to provision of the personnel files. Nothing in the record suggests that plaintiffs and Bare shared any relationship outside of the employment relationship, or that the employment relationship was not the proximate cause of the complained-of conduct. At oral argument,

plaintiffs emphasized that *other* defendants in the underlying third party suit may have had non-employment related motives for *requesting* this information, but plaintiffs conceded that the only relationship between plaintiffs and Bare was the employment relationship, and nothing indicates that anything else motivated plaintiffs in *providing* this information.  Nor were plaintiffs alleged to have such an additional motive in the underlying third party complaint.  Absent such an external relationship, and in light of the nexus between the conduct and the employment, the passage of time is not itself informative.

The court notes that four of the prior cases considering this issue concerned motions for summary judgment, and that the fifth concerned an unusual posture.  <u>See</u> footnote 3, supra.  In this case, however, plaintiffs have not identified any way in which further development of the factual record would influence the outcome of this case.  At oral argument, plaintiffs acknowledged that the documents relating to the third party complaint were already in plaintiff's possession.

Plaintiffs alternatively request that, if defendant's motion is granted, plaintiffs be granted leave to amend.  A scheduling order has been entered in this case, under which good cause must be shown for amendment of the pleadings.  <u>Johnson v. Mammoth Recreations, Inc.</u>, 975 F.2d 604, 609 (9th Cir. 1992).  <u>C.f.</u> <u>Johnson v. Clovis Unified School District</u>, No. 1:04-CV-6719, 2007 WL 1456062, *5 (E.D. Cal. May 17, 2007) (in granting a Rule 12(c) motion, granting leave to amend where no scheduling order had yet

1 been entered in the case).  Even if the court found good cause,

2 plaintiffs' proposed amendments would be futile.  Plaintiffs seek

3 to amend to allege that:

> Mr. Bare was only employed with Stidham
> Trucking, Inc., for approximately seventy days
> in 1993, which was six years before the
> alleged defamatory statement; that the
> statement was made to persons who were not
> past, present or future employees of Stidham
> Trucking, Inc.; that the statement by Mr.
> Stidham was made to Mr. Bare's then employer
> after being shown Mr. Bare's resume; and that
> Mr. Stidham believed that the statement was
> true.

10 Pls.' Opp'n, 12.  These proposed additional allegations would, if

11 anything, bolster the *defendant*'s position, by further indicating

12 that Stidham's statements arose out of his role as a reference for

13 a former employee.  Accordingly, leave to amend is denied.

### IV.  CONCLUSION

15      For the reasons provided above, defendant's motion for

16 judgment on the pleadings, Doc. No. 13, is GRANTED.  This action

17 is DISMISSED WITH PREJUDICE.

18      IT IS SO ORDERED.

19      DATED:  December 10, 2009.


LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT